1

2

3

4

5

6

7

8

9               UNITED STATES DISTRICT COURT

10              EASTERN DISTRICT OF CALIFORNIA

11

12    WOODLAND TRACTOR AND                No. 2:15-cv-02042-MCE-DB
      EQUIPMENT CO., INC.,
13
                    Plaintiff,
14                                        **MEMORANDUM AND ORDER**
           v.
15
      CNH INDUSTRIAL AMERICA, LLC,
16
                    Defendant.
17

18

19          By way of this action, Plaintiff Woodland Tractor and Equipment Co, Inc.

20    ("Plaintiff") seeks damages arising from Defendant CNH Industrial America, LLC's

21    ("Defendant") termination of the parties' Dealership Agreement.  Plaintiff asserts four

22    causes of action: (1) breach of contract, (2) breach of the California Equipment Dealers

23    Act ("CEDA"), Cal. Bus. & Prof. Code § 22900, et seq., (3) intentional interference with

24    economic relations, and (4) breach of the CEDA with respect to the termination and

25    wind-up of the Dealership Agreement, Cal. Bus. & Prof. Code § 22905.  Defendant now

26    moves for summary judgment, or in the alternative, partial summary judgment, as to all

27    causes of action currently asserted by Plaintiff.  For the reasons stated below,

28    Defendant's Motion for Summary Judgment (ECF No. 37) is GRANTED with respect to

the first three Causes of Action, and GRANTED in part and DENIED in part with respect to the Fourth Cause of Action.[1]

## **BACKGROUND**[2]

Plaintiff conducts the sale, renting, leasing, and servicing of agricultural equipment and related products and services. Defendant manufactures agricultural equipment under the New Holland brand. In September 2003, the parties entered into a Dealership Agreement ("Agreement") which allows Plaintiff to sell, rent, or lease Defendant's New Holland brand equipment. On June 21, 2011, Defendant sent a Notice of Default to Plaintiff, explaining that Plaintiff failed to meet the 90% market share objective set forth in the Agreement because it only sold one tractor between May 2010 and April 2011. The Notice also provided that should Plaintiff fail to cure, the Agreement would terminate on July 31, 2012. Defendant sent another Notice of Default in February 2012 restating its intent to terminate the Agreement unless Plaintiff could adequately cure.

Subsequently, on August 6, 2012, Defendant issued a Notice of Termination to Plaintiff, stating that termination would take effect on August 31, 2012. A few days before that termination was to take place, Plaintiff requested a one-year extension of the Agreement. Defendant did not agree to the one-year extension but ultimately agreed to extend the termination date to October 31, 2012. On October 2, 2012, Plaintiff requested a six-month extension to March 31, 2013, because it was in the process of selling its dealership; Defendant agreed to the March 31, 2013 termination date. The termination deadline was then extended two more times to allow Plaintiff more time to complete that sale. Eventually, on November 1, 2013, Defendant issued a Notice of

---

[1] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with Local Rule 230(g).

[2] The following undisputed facts are derived from Plaintiff's Complaint (ECF No. 1) and Defendant's Motion for Summary Judgment (ECF No. 37-1).

1  Impending Termination to Plaintiff based on the lack of progress toward the sale of the

2  dealership.  Defendant formally terminated the Agreement on December 31, 2013.

3

4  **STANDARD**

5

6  The Federal Rules of Civil Procedure provide for summary judgment when "the

7  movant shows that there is no genuine dispute as to any material fact and the movant is

8  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

9  Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to

10  dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

11  Rule 56 also allows a court to grant summary judgment on part of a claim or

12  defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may

13  move for summary judgment, identifying each claim or defense—or the part of each

14  claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v.

15  Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).  The standard that applies to a

16  motion for partial summary judgment is the same as that which applies to a motion for

17  summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic

18  Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary

19  judgment standard to motion for summary adjudication).

20  In a summary judgment motion, the moving party always bears the initial

21  responsibility of informing the court of the basis for the motion and identifying the

22  portions in the record "which it believes demonstrate the absence of a genuine issue of

23  material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial

24  responsibility, the burden then shifts to the opposing party to establish that a genuine

25  issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith

26  Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

27  253, 288-89 (1968).

28  ///

3

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.
///

4

1  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>,

2  810 F.2d 898 (9th Cir. 1987).

3

4  **ANALYSIS**

5

6  **A.    First Cause of Action: Breach of Contract**

7        Plaintiff contends that Defendant is liable for breaching the Agreement in a variety

8  of ways.  The standard elements for a breach of contract are "(1) the contract,

9  (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and

10  (4) damage to the plaintiff therefrom."  <u>Abdelhamid v. Fire Ins. Exchange</u>,

11  182 Cal. App. 4th 990, 999 (3d Dist. 2010).  Because the Court finds no breach based

12  on the undisputed facts, Defendant's Motion is granted as to this claim.[3]

13        Defendant has offered more than ample evidence that it properly terminated the

14  Agreement under its provisions.[4]  As previously stated, Plaintiff only sold one tractor in

15  one year, far below its previous sales performance and the agreed-upon 90% market

16  share objective.  Mot. Summary Judgment, ECF No. 37-1, at 13-14.  As a result,

17  Defendant provided notice to Plaintiff in June 2011 and offered one year to cure; when

18  Plaintiff failed to cure by the one-year deadline, Defendant extended the termination date

19  ─────────────

20        [3] In its Opposition, Plaintiff asserts primarily (and for the first time) that Defendant breached the
   implied covenant of good faith and fair dealing by "appl[ying] different, more stringent standards to
21  [Plaintiff] during the 'cure' process than it applied to other, similarly situated dealers . . . [and] provided the
   Termination Notice without good cause . . ."  Pl.'s Opp'n to Mot. Summary Judgment, ECF No. 41, at 6.
22  To state a claim in that regard, Plaintiff must show that "the conduct of the defendant, whether or not it
   constitutes a breach of a consensual contract term, . . . unfairly frustrates the agreed upon purposes and
23  disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of
   the agreement."  <u>Careau & Co. v. Sec. Pac. Bus. Credit, Inc.</u>, 222 Cal. App. 3d 1371, 1395 (1990).  "If the
24  allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged
   acts, simply seek the same damages or other relief already claimed in a companion contract cause of
25  action, they may be disregarded as superfluous as no additional claim is actually stated."  <u>Id.</u>  Plaintiff
   failed to plead a separate cause of action in the Complaint, primarily because its claim hinges on whether
26  Defendant violated express terms of the Agreement.  Therefore, this argument also fails.

27        [4] To the extent Plaintiff also contends that Defendant purportedly breached the CEDA, which then
   resulted in a breach of the Agreement, that argument fails because Defendant has shown it complied with
28  the notice and cure provisions of the CEDA, Cal. Bus. & Prof. Code § 22903(b), and, for the reasons that
   follow, Defendant's termination was supported by good cause, <u>id.</u>, § 22901(l).

multiple times before officially terminating the Agreement in December 2013. Id. at 15. Because Plaintiff failed to comply with the terms of the Agreement despite an extensive time to cure, Defendant had good cause for its termination.

Plaintiff does not provide any evidence in opposition to the foregoing and instead argues that its breach was excused for two reasons. First, Plaintiff contends that Defendant actually breached the Agreement "by failing to honor requests for inventory." Compl., ECF No. 1, at 6. Specifically, Plaintiff claims it placed an order for certain equipment that Defendant then failed to timely deliver. Id. It was not until the issuance of the August 2012 Notice of Termination, over a year after placing the order, that Defendant provided the equipment. Id. Ultimately, however, Plaintiff's suggestion that Defendant's actions caused Plaintiff's shortcomings is unpersuasive. It is undisputed that Plaintiff had "sufficient New Holland tractors in stock" prior to the original Notice of Default in June 2011, which means Plaintiff did not need to wait for Defendant to deliver inventory. Mot. Summary Judgment, ECF No. 37-1, at 15. Additionally, Plaintiff only sold one tractor between May 2010 and April 2011; if Plaintiff needed more inventory to sell, it should have requested it during that time period. Id. at 13-14. Plaintiff thus fails to show a breach on this allegation.

Second, Plaintiff contends Defendant "failed to provide adequate sales and service support" while "provid[ing] incentives and other assistance to other dealerships with similar inventory as Plaintiff." Compl., ECF No. 1, at 6-7. As Defendant points out, the Agreement does not require Defendant to affirmatively assist Plaintiff in selling its products. See Mot. Summary Judgment, ECF No. 37-1, at 14. In fact, the purpose of a dealership agreement is for a supplier to shift the sales role to a dealer. See Cal. Bus. & Prof. Code § 22901(f), (g), (v) (defining "dealer," "dealer contract," and "supplier," respectively). Because there was no provision requiring Defendant to assist Plaintiff, there was no breach of contract on such grounds. Defendant was justified in terminating its relationship with Plaintiff under the Agreement, and the Court GRANTS its Motion as to Plaintiff's breach of contract cause of action.

6

## B.    Second Cause of Action: Breach of the CEDA

Plaintiff next alleges Defendant terminated the Agreement without good cause in violation of the CEDA.  A supplier cannot "terminate, cancel, or fail to renew a dealer contract or materially change the competitive circumstances of the dealer contract without good cause."  Cal. Bus. & Prof. Code § 22902(d).  "Good cause" is defined as a "failure by a dealer to comply with the requirements imposed on the dealer by the dealer contract, if those requirements are not different from those requirements imposed on other similarly situated dealers in this state."  Id. § 22901(l).  For the reasons stated above, Defendant had good cause to terminate the Dealership agreement under its terms and thus did not breach the CEDA.

In opposition, Plaintiff does not dispute the foregoing, but instead argues that Defendant set an unreasonable 90% market share objective, treated Plaintiff differently from other California dealers, and impermissibly sought a full release of liability from Plaintiff in contravention of California law.  Compl., ECF No. 1, at 9.  According to Plaintiff, the 90% market share objective is unreasonable, "given [Plaintiff's] historical operation, location, and the economic and financial impacts of the recession and general downturn in the economic times beginning in 2008 and continuing through the date of termination."  Compl., ECF No. 1, at 9.  Defendant, on the other hand, contends that this standard is not only reasonable but one that Plaintiff agreed to when the Agreement was executed in 2003.  Mot. Summary Judgment, ECF No. 37-1, at 17.  The Court agrees with Defendant that "not [being] able to meet its agreed-to market share requirements does not make the market share or how it is calculated unreasonable."  Id.  Because Plaintiff agreed to the 90% market share objective and only questioned its reasonableness when it failed to meet it, this argument fails.

Next, Plaintiff contends that Defendant "did not hold all dealers in the state of California to the same standard and treated [Plaintiff] different [sic] with respect to market share objective performance, ability to obtain requested inventory and general services and support from Defendant[]."  Compl., ECF No. 1, at 9.  Plaintiff identifies

1    Chico Farm & Orchard, Inc. (located "just 73 miles from [Plaintiff]") and N&S Tractor

2    Company (located in Merced) as two similarly situated dealers in California who fell

3    below the 90% market share objective and were notified by Defendant that a failure to

4    cure would result in termination of their agreements.  Pl.'s Opp'n to Mot. Summary

5    Judgment, ECF No. 41, at 7.  Chico Farm & Orchard was ultimately removed from the

6    cure process despite failing to meet the market share objective whereas N&S Tractor

7    Company was granted a 24-month extension to cure.  Id.  Despite these broad

8    comparisons, Plaintiff fails to provide any evidence actually showing that the dealers are

9    similarly situated.  To the contrary, all that Plaintiff has shown is that all three dealers

10   operate in California and received notice-and-cure letters from Defendant; there is no

11   evidence regarding the sales performance of these dealers or how they compare in any

12   other material way.  Because of this lack of evidence, Plaintiff's argument fails.

13         Lastly, Plaintiff alleges Defendant "sought a full release of all liability from Plaintiff

14   in exchange for delayed termination and later in exchange for receipt of full payment for

15   inventory as required by the Act, and/or as a precondition for Defendant[] to continue to

16   provide parts to Plaintiff, all in breach of the Act."  Compl., ECF No. 1, at 9.  A supplier

17   cannot "require a dealer to assent to a release, assignment, novation, waiver, or

18   estoppel that would relieve any person from liability imposed by [the CEDA]."  Cal. Bus.

19   & Prof. Code § 22902(i).  Defendant on the other hand provides evidence that it

20   requested that both parties execute a mutual release, except as provided in the

21   Dealership agreement, which in turn incorporated the parties' rights from the CEDA.

22   Accordingly, since the contemplated release still required compliance with the CEDA,

23   this argument must also fail.  See Exhibit 8, ECF No. 37-25.  The Court thus GRANTS

24   Defendant's Motion for Summary Judgment of Plaintiff's breach of the CEDA cause of

25   action as well.

26   ///

27   ///

28   ///

**C.    Third Cause of Action: Intentional Interference with Economic Relations**

Plaintiff next asserts an intentional interference with economic relations cause of action, alleging that Defendant "knew and intended that their termination of the Dealer Agreement . . . w[as] certain or substantially certain to interfere with [Plaintiff's] economic relationship with various customers and owners of New Holland products in the area." Compl., ECF No. 1, at 11.  Under California law, the elements of an intentional interference with economic relations cause of action are: (1) an economic relationship between plaintiff and a third party, and probability of future economic benefit; (2) defendant's knowledge of the relationship; (3) intentional acts of the defendant designed to disrupt the relationship; (4) actual disruption; and (5) that defendant's intentional interference was the proximate cause of the economic harm to the plaintiff. Korean Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003).  All five elements must be satisfied in order to state a viable cause of action.  For purposes of this motion, the Court need only address the third element: intentional acts of the defendant designed to disrupt the relationship.

As part of the third element, Plaintiff must plead that the intentional acts of Defendant are wrongful under some legal theory aside from the interference itself.  Della Penna v. Toyota Motor Sales, U.S.S., Inc., 11 Cal. 4th 376, 393 (1995).  Here, Plaintiff fails to allege that Defendant's wrongful acts amounted to conduct that is distinct from the breach of contract claim itself.  See JRS Products, Inc. v. Matsushita Elec. Corp. of Am., 115 Cal. App. 4th 168, 181-82 (2004) ("A contracting party's unjustified failure or refusal to perform is a breach of contract claim, and cannot be transmuted into tort liability by claiming that the breach [interfered with Plaintiff's] business.").  Specifically, Plaintiff does not allege any independent acts designed to interfere with the relationship between Plaintiff and its customer base.  Therefore, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's Third Cause of Action.

///

**D.    Fourth Cause of Action: Breach of the CEDA, Related to Termination and Wind Up of Agreement**

Lastly, Plaintiff alleges Defendant breached the CEDA in relation to the termination and wind-up of the Agreement by "fail[ing] and refus[ing] to pay Plaintiff for all returned inventory, including repair parts." Compl., ECF No. 1, at 12. The CEDA defines "repair parts" as "all parts and products related to the service or repair of equipment, including superseded parts." Cal. Bus. & Prof. Code § 22901(s).

Plaintiff first contends that it is still owed $4,565.36 for parts it returned to Defendant that Defendant claims were missing pieces, improperly labeled, damaged or not salable. Accordingly, Defendant takes the position that it is not required to reimburse Plaintiff for those parts. See id., § 22905(j). Because Plaintiff offers no evidence to indicate it actually returned parts in good order for which it was never reimbursed, Plaintiff's first contention fails and Defendant's Motion is GRANTED as to this argument.

More importantly as to this cause of action, the parties also dispute whether New Holland equipment operator manuals, CD's, and publications fall under the CEDA's definition of "repair parts." Mot. Summary Judgment, ECF No. 37-1, at 20. Both parties agree that case and statutory authority fail to provide any guidance on this question. Statutes in other states explicitly require suppliers to repurchase manuals and similar items. Id. at 21. See Idaho Code § 28-23-102 (requires a supplier to repurchase manuals and repair manuals "unique to the supplier's product line"); see also Mich. Comp. Laws § 445.1452(l) (defines "dealer supplies" to include books and manuals "used by the dealer to facilitate the sale or repair of inventory furnished by the supplier").

California is not required, however, to emulate statutory language used by other states. Although not necessarily as specific as definitions employed by other jurisdictions, the CEDA's inclusion of the word "products" suggests that the California legislature intended its coverage to be broad enough to require suppliers to repurchase everything related to the service or repair of supplier's inventory. Such a broad definition would certainly encompass manuals, CD's, publications, and other items related to the

service or repair of inventory.  Therefore, the Court DENIES Defendant's Motion as to the Fourth Cause of Action to the extent it is based on this latter argument.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment, ECF No. 37, is GRANTED in part and DENIED as follows:

1.      Defendant's Motion is GRANTED as to the first three causes of action and as to the fourth cause of action to the extent Plaintiff argues it is still owed $4,565.36 for parts it returned to Defendant that Defendant claims were missing pieces, improperly labeled, damaged or not salable; and

2.      Defendant's Motion is DENIED as to the fourth cause of action to the extent it is based on Defendant's failure to reimburse Plaintiff for operator manuals, CD's, and publications, etc.

IT IS SO ORDERED.

Dated:  April 2, 2019

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE